# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AMERICAN APPAREL & FOOTWEAR ASSOCIATION, INC.; HALLOWEEN INDUSTRY ASSOCIATION, INC.; JUVENILE PRODUCTS MANUFACTURERS ASSOCIATION, INC.;** and **THE TOY ASSOCIATION, INC.,** | Case No. 3:21-cv-1757-SI **OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **JAMES SCHROEDER**, in his official capacity as Interim Director of the Oregon Health Authority[1]; and **ELLEN ROSENBLUM**, in her official capacity as Attorney General for the State of Oregon, | |
| Defendants. | |

James T. McDermott and Dwain M. Clifford, MCDERMOTT WEAVER CONNELLY CLIFFORD LLP, 1000 SW Broadway, Suite 960, Portland, OR, 97205. Of Attorneys for Plaintiffs.

Keith A. Ketterling, Steven C. Berman, and Lydia Anderson-Dana, STOLL STOLL BERNE LOTKING & SHLACHTER PC, 209 SW Oak Street, Suite 500, Portland, OR 97204. Special Assistant Attorneys General for Defendants.

---

[1] James Schroeder has replaced former Director of the Oregon Health Authority, Patrick Allen, and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See* ECF 80.

**Michael H. Simon, District Judge.**

Plaintiffs are four trade associations that represent manufacturers of children's products. Plaintiffs seek to enjoin both the Interim Director of the Oregon Health Authority (OHA) and the Oregon Attorney General (Defendants) from enforcing portions of Oregon's Toxic-Free Kids Act (TFK Act)[2] and two of its implementing regulations. The TFK Act directs the OHA to establish and maintain a list of high priority chemicals of concern for children's health (HPCCCHs) when used in children's products and to issue regulations implementing this law. Oregon's list of HPCCCHs[3] contains 73 chemicals, 16 of which are also regulated by relevant federal law.

Plaintiffs initially asserted that the Federal Hazardous Substances Act (FHSA)[4] and the Consumer Product Safety Act (CPSA)[5] preempt three provisions of the TFK Act and its implementing regulations. These provisions are Oregon Revised Statutes (ORS) § 431A.258 (the "Notice Statute"), Oregon Administrative Rule (OAR) 333-016-2060 (the "Notice Regulation"), and OAR 333-016-3015 (the "Exemption Regulation"). Plaintiffs requested that the Court declare these provisions void and enjoin Defendants from enforcing them. Plaintiffs also brought a state law claim, contending that the OHA exceeded its statutory authority when it promulgated the Exemption Regulation.

Defendants previously moved to dismiss the preemption claims to the extent they are based on the FHSA, and Plaintiffs moved for summary judgment on all claims. In June 2022, the

---

[2] Oregon Revised Statutes (ORS) §§ 431A.250-431A.280.

[3] Oregon Administrative Rule (OAR) 333-016-2020.

[4] 15 U.S.C. §§ 1261-1278a.

[5] 15 U.S.C. §§ 2051-2089.

Court dismissed Plaintiffs' claims based on the FHSA, denied Plaintiffs' motion for summary judgment for their claims based on federal law, and deferred ruling on the state law claim.

Defendants now ask the Court to dispose of the remainder of Plaintiffs' case, and Plaintiffs cross-move for summary judgment in their favor. Defendants seek summary judgment on Plaintiffs' claims and allegations based on or arising under the CPSA. Defendants also seek summary judgment on Plaintiffs' state law claim, arguing that this claim is barred by the Eleventh Amendment. Alternatively, Defendants propose that the Court deny supplemental jurisdiction for this claim or grant their motion for summary judgment on the merits. Plaintiffs cross-move for summary judgment on their state law claim as well as the CPSA claims. Plaintiffs argue that the CPSA expressly or impliedly preempts the Notice Statute, the Notice Regulation, and the Exemption Regulation. Plaintiffs ask the Court to declare these provisions void and to enjoin their enforcement.

## BACKGROUND

In the Court's Opinion and Order dated June 22, 2022, the Court provided relevant background about the CPSA and its relevant provisions. *Am. Apparel & Footwear Ass'n, Inc. v. Allen* (*Am. Apparel I*), 2022 WL 2235907, at *3-7 (D. Or. June 22, 2022). The Court will now briefly summarize the relevant provisions of the TFK Act and its implementing regulations.

The **Notice Statute** requires manufacturers of children's products, or the manufacturers' trade associations, to provide biennial notices when a children's product that is sold or offered for sale in Oregon contains a chemical listed as a HPCCCH, at or above a *de minimis* level. ORS § 431A.258(1)(a), (6).

The **Notice Regulation**, promulgated by the OHA under the TFK Act, specifies that a manufacturer's (or trade association's) notice must include the amount of the chemical used in each "unit" (defined as each "component part") within each product category, reported as a

range. OAR 333-016-2060(5)(d), (1); *see also* OAR 333-016-2010(9) (defining "component part"). The Notice Regulation also sets the calendar for when notices are due according to a biennial notice schedule. *See* OAR 333-016-2060(3), (4). The Court refers to the Notice Statute and Notice Regulation together as the "Notice Provisions."

The **Exemption Regulation** lists criteria for when a children's product containing an HPCCCH is exempt from the TPK Act's "removal or substitution" requirement, which is discussed in another provision not challenged by Plaintiff. OAR 333-016-3015(2). A manufacturer may apply for an exemption in any of the following four circumstances:

> (a)    The children's product contains a HPCCCH used in children's products at levels that are at or below allowable levels for children's products as established by the Consumer Product Safety Improvement Act of 2008, P.L. 110-314, 122 Stat. 3016, as in effect on July 27, 2015.

> (b)    A manufacturer is in compliance with a federal consumer product safety standard adopted under federal law that establishes allowable levels for children's products of a high priority chemical of concern for children's health used in children's products.

> (c)    The State of Washington has granted an exemption for the removal or substitution of a HPCCCH in the same children's product model for which the exemption is requested under OAR 333-016-3015.

> (d)    A children's product has been tested under applicable EN-71 standards, by a laboratory that is accredited to conduct such testing under the current edition of ISO/IEC 17025 by an accreditation body that is a signatory to the International Laboratory Accreditation Cooperation mutual recognition arrangement.

*Id.* To obtain an exemption, a manufacturer must submit appropriate documentation to the OHA, along with a $1,500 fee. OAR 333-016-3015(4); OAR 333-016-2080(1)(e) (fee amount). When a manufacturer seeks an exemption due to compliance with a federal consumer product safety standard under subsection 2(b), the supporting documentation must include a citation to the

federal consumer product safety standard that establishes an allowable level of a HPCCCH in children's products. OAR 333-016-3015(4)(b). Finally, "[m]ore than one product model may be submitted in a single exemption request." OAR 333-016-3015(3).

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526,

532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving

party need only prove that there is an absence of evidence to support the non-moving party's

case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-

moving party bears the burden of designating "specific facts demonstrating the existence of

genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed

that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as

to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## DISCUSSION

After this Court's Opinion and Order dismissing Plaintiffs' preemption claims "to the

extent" that they are based on the FHSA, the remaining issue concerns only the preemptive effect

of the CPSA. Federal law may preempt state law under the Supremacy Clause in three ways:

"(1) express preemption; (2) field preemption (sometimes referred to as complete preemption);

and (3) conflict preemption." *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003). In any

preemption analysis, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks Int'l*

*Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103 (1963). Only express preemption and

implied conflict preemption are claimed by Plaintiffs. The Court first considers, however, the

standards to apply to Plaintiffs' facial challenge, which apply to both Plaintiffs' express and

implied preemption theories.

## A.  Facial Challenge Standards

A court may declare a statute unconstitutional in one of two manners: (1) the court may

declare it invalid on its face, or (2) the court may find the statute unconstitutional as applied to a

particular set of circumstances. *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011); *see*

*generally* Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev.

235, 236 (1994). The Court previously limited Plaintiffs' CPSA preemption claims to a facial

challenge. *Am. Apparel & Footwear Ass'n, Inc. v. Allen* (*Am. Apparel II*), 2022 WL 6732531, at *2 (D. Or. Oct. 11, 2022).

The Court thus considers Plaintiffs' arguments only from the perspective of a facial challenge. Any facial challenge, which necessarily seeks to invalidate the entirety of a challenged provision, faces a high bar. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court has applied the *Salerno* standard in a facial preemption challenge to a state regulation. *See Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) ("[B]ecause respondents challenged the California Rule on its face by seeking to enjoin its enforcement altogether, they could not sustain their burden even if they showed that a possible application of the rule . . . violated federal law." (citing *Salerno*, 481 U.S. at 745) (citation to record omitted)).

The Ninth Circuit applies the "no set of circumstances" test from *Salerno* to facial preemption challenges. *See Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1108 (9th Cir. 2016) (holding that it would be unreasonable to strike down the entirety of Arizona identity theft laws as preempted where the state "retains the power to enforce the laws in ways that do not implicate federal immigration priorities"). The *Salerno* standard applies in all "cases involving federal preemption of a local statute." *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 543 F.3d 571, 579 n.3 (9th Cir. 2008) (en banc) (explaining that *Salerno* applies "with full force" to such cases despite questions of *Salerno*'s validity in First Amendment contexts). The fact that a state agency could theoretically apply a law in a way that would conflict with a federal statute does not meet the "high burden" for facial challenges. *Id.* at 580.

A statute or regulation can have portions that are preempted and portions that are not. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1049 (9th Cir. 2007) (clarifying that "*Salerno* requires the plaintiff to show that there can be no valid application of a particular challenged provision. However, *Salerno* does not require a plaintiff to show that every provision within a particular multifaceted enactment is invalid."). The Ninth Circuit has emphasized that "valid *provisions*" differ from "valid applications of a single, unseverable provision." *Id.* at 1049-50 (emphasis in original).

As a result, the Court could invalidate only certain provisions of the challenged TSK Act and its implementing regulations. Plaintiffs, however, still must show that "there can be no valid application of" the specific provisions that Plaintiffs seek to invalidate. *Id.* at 1049. Further, if Plaintiffs challenge only a portion of the Act or a regulation, it must be a separate and severable provision. *See id.* at 1049-50.

## B.  Express Preemption

### 1.  Applicable Standard

Plaintiffs argue that the *Salerno* standard is inapplicable and that the Court should apply instead an "identicality" standard to Plaintiffs' express preemption challenge under the CPSA. The "identicality" standard that Plaintiffs reference derives from the text of the express preemption clause in the CPSA, which indicates that state requirements in certain areas (such as contents and packaging) for certain federally regulated consumer products must be "identical" to the requirements of the federal standard:

> Whenever a consumer product safety standard under this chapter is in effect and applies to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which

> are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a).

The Court agrees that express preemption requires courts to "begin with the wording" of the federal statute's preemption provision and also "consider the statute as a whole to determine whether the local ordinance actually conflicts with the overall federal regulatory scheme." *R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th 542, 553 (9th Cir. 2022) (quotation marks omitted). Plaintiffs are mistaken, however, that an analysis of the text of the preemption provision somehow reduces their obligations in bringing a facial challenge. Even if *some* applications of the challenged provisions could conflict with the wording of the federal statute's preemption provision, the Court may not enjoin the entire provisions unless *all* applications would conflict. *See Salerno*, 481 U.S. at 745. *Salerno* thus applies to any *facial* preemption challenge, including express preemption challenges. *See, e.g.*, *Engine Mfrs. Ass'n*, 498 F.3d at 1049 (applying *Salerno* to the question of whether the Clean Air Act's express provisions facially preempted each of several challenged state provisions).

## 2. Application of the *Salerno* Standard

The Court already has concluded that *Salerno* precludes Plaintiffs' argument that the express preemption provision in the CPSA preempts the challenged provisions in their entirety. *Am. Apparel I*, 2022 WL 2235907, at *13-15. To reiterate, the plain language of the CPSA does not preempt state regulations of chemicals that are not subject to specific regulations adopted by the Commission as "consumer product safety standards." Because 57 of the 73 HPCCCHs regulated under the TFK Act have not been expressly mentioned in any "consumer product safety standard" issued under the CPSA, Plaintiffs cannot establish, as a matter of law, that every application of the challenged provisions are preempted. *See Sprint*, 543 F.3d at 579-80 (rejecting

a facial preemption challenge to a local ordinance because the plaintiff failed to "establish that no set of circumstances exists under which [the ordinance] would be valid"). Congress made its intention clear that it preempts only state regulations of products for which the Commission also had promulgated a consumer product safety standard. Granting a facial challenge would allow Plaintiffs to escape state regulation of 57 chemicals that the Commission left to the judgment of a State.

As an example, under the Exemption Regulation, a manufacturer who uses one of the 57 chemicals regulated only under Oregon law may seek an exemption under subpart (2)(c) or (2)(d) of the Exemption Regulation, which look to Washington law or international standards. If the chemical used meets those requirements, the manufacturer could then submit to Oregon an exemption request, documentation, and the fees specified in the Exemption Regulation. This application steers clear of any federal conflict. Because Plaintiffs bring a facial challenge to the entire Exemption Regulation,[6] however, their requested relief would prevent this constitutional application and violate the *Salerno* standard.

Reviewing the Notice Provisions does not change this result. Plaintiffs argue that the Notice Provisions are preempted because they require manufacturers to report chemicals contained in "inaccessible" parts of children's toys. *See* OAR 333-016-2060(1), (5)(d) (requiring manufacturers to notify the OHA about the "amount of the chemical used in each unit within

---

[6] Plaintiffs' arguments focus on subpart (4) of the Exemption Regulation, which contains the documentation, citation, and fee requirements for exemptions. OAR 333-016-3015(4). Because these requirements apply to all four categories in subpart (2), including the exemptions available under federal law, Washington law, and international standards, the Court construes the Exemption Regulation as a "single, unseverable provision." *Engine Mfrs. Ass'n*, 498 F.3d at 1050. Plaintiffs do not ask the Court to sever subsection (2)(a) or (b), which implicate federal standards. Even if the Court were to consider this severance option, it would fail for the reasons discussed under Plaintiffs' alternate "identicality" standard, Part B.3, *infra*.

each product category and defining "unit" as "component part"); OAR 333-016-2010(9) (defining "component part" without regard to whether a part is accessible). According to Plaintiffs, Congress and the CPSC require that only "accessible" chemicals in children's toys are subject to testing, measurement, and regulation. Plaintiffs contend that by requiring manufacturers to determine and disclose the amount of a listed HPCCCH chemical present in a component part that is not accessible to a child, the Notice Provisions are expressly preempted by federal law.

The Court construes this argument as a request to sever only portions of the Notice Provisions, as anticipated under *Engine Manufacturers Association*, 498 F.3d at 1050, that implicate "inaccessible" components of federally regulated products. Plaintiffs, however, do not show how the Court could facially invalidate the portion of the Notice Provisions that purportedly create testing requirements for "inaccessible" parts *only* when federally regulated HPCCCHs are involved. There is no clear way to sever the Notice Provisions to achieve the relief Plaintiffs request. Thus, the relevant Notice Provisions constitute a "single, unseverable provision" that applies to all 73 HPCCCHs. *Engine Mfrs. Ass'n*, 498 F.3d at 1050. Because the Notice Provisions are constitutional as applied to 57 of the 73 HPCCCHs even for "inaccessible" parts, the Court rejects this argument under *Salerno*.

Even if requiring notice of federally regulated chemicals in "inaccessible" components were a severable provision, Plaintiffs' argument would still fail. Plaintiffs are unable to show that *every* application of the reporting requirement for "inaccessible" components would necessarily lead to a conflict with federal law. The Notice Provisions do not contain testing requirements. Rather, manufacturers must report the presence of HPCCCHs and give a "range" of how much of the chemicals are present. ORS 431A.258(2)(d); OAR 333-016-2060(5)(d). It may be true that

reporting for some products could require testing of inaccessible component parts. But for other products, manufacturers may be able to report the chemical makeup of inaccessible parts based on knowledge generated from other sources, such as the manufacturing process. Thus, Plaintiffs cannot prove that "no set of circumstances exists under which the Act would be valid." *Salerno*, 418 U.S. at 745; *see also Puente Ariz.*, 821 F.3d at 1107-08 ("Just because some applications of [challenged state] laws implicate federal immigration priorities does not mean that the statute as a whole should be struck down."). Without an as-applied challenge with specific facts that would enable this Court to address a concrete conflict, the Court cannot enjoin the Exemption Regulation, the Notice Provisions, or any portion thereof.

### 3.  Application of Plaintiffs' Alternate "Identicality" Standard

Application of the *Salerno* standard disposes of Plaintiffs' express preemption claims. But even if the Court were to apply the "identicality" standard as interpreted by Plaintiffs, Plaintiffs would still fail to show that the CPSA expressly preempts the Notice Provisions, Exemption Regulation, or any subpart of these provisions. The text of the CPSA's express preemption provision provides for "limited preemption." *Nat'l Kerosene Heater Ass'n, Inc. v. Massachusetts*, 653 F. Supp. 1079, 1090 (D. Mass. 1986). The provision applies to only eight specific categories of state regulations: (1) performance, (2) composition, (3) contents, (4) design, (5) finish, (6) construction, (7) packaging, or (8) labeling. 15 U.S.C. § 2075(a).

The challenged Notice Provisions and Exemption Regulation do not fall within any of these categories. The Notice Provisions require manufacturers to provide biennial notice to the OHA of certain information. ORS § 431A.258(1)(a), OAR 333-016-2060. The Exemption Regulation requires manufacturers to submit exemption requests to the OHA to avoid separate substitution or removal requirements. For federal standards, the exemption request must contain supporting documentation, a citation to the applicable safety standard, and a fee. OAR 333-016-

3015(4), (4)(b). These provisions do not require manufacturers to alter the composition or content of HPCCCHs in their products, label or package the products in any particular way, or to make any other changes to their products that would implicate the eight categories. By the plain text of the CSPA express preemption provision, *see R.J. Reynolds Tobacco Co.*, 29 F.4th at 553, neither regulation falls within the limited preemption of the CPSA.

Additionally, for the Notice Provisions, the Ninth Circuit has foreclosed Plaintiffs' argument. The Ninth Circuit declined to conclude that "Congress . . . intended to preempt state regulations requiring the submission of data to state government agencies" absent any indication to the contrary. *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500 (9th Cir. 2005) (holding that the federal Energy Policy and Conservation Act did not expressly preempt California's requirement that appliance manufacturers submit data to an electronic database). Thus the Notice Provisions, which require only the submission of data to Oregon, do not run afoul of the "identicality" standard proposed by Plaintiffs.

Moreover, for the Exemption Regulation, the plain language of the CPSA's preemption clause permits states to adopt "requirements [that] are identical to the requirements of the Federal standard." 15 U.S.C. § 2075(a). By allowing states to adopt substantively identical requirements, the statute allows states to choose enforcement mechanisms for those requirements. *Air Conditioning*, 410 F.3d at 505 ("The power to regulate must include the complementary power to enforce those regulations."). In defining their compliance and enforcement rules, states may impose additional penalties or fees above those imposed by federal law. *See id.* at 503. Therefore, even under the "identicality" standard urged by Plaintiffs, the entirety of the

Exemption Regulation, including the clauses addressing federally regulated products, avoids express preemption.

## C.  Implied Conflict Preemption

In their cross-motion for summary judgment, Plaintiffs also assert a facial challenge, arguing that the CPSA impliedly preempts the Notice Statute, Notice Regulation, and Exemption Regulation. To bring a facial challenge of implied conflict preemption, Plaintiffs still must overcome the high bar set in *Salerno*: that "no set of circumstances exists under which the Act could be valid." *See Puente Ariz.*, 821 F.3d at 1104. The Ninth Circuit has held repeatedly that the *Salerno* standard also applies to facial challenges claiming *implied* preemption. *See, e.g.*, *Puente Ariz.*, 821 F.3d at 1104-05; *CDK Global LLC v. Brnovich*, 16 F.4th 1266, 1277 (9th Cir. 2021) ("Because this is a facial challenge, it is CDK's burden to show that every possible application of the law would conflict with the Copyright Act."); *Knox v. Brnovich*, 907 F.3d 1167, 1177 (9th Cir. 2018) (applying the "no set of circumstances" test to field and conflict, *i.e.*, implied, preemption).

Implied preemption under the Supremacy Clause can take two forms, field preemption and conflict preemption. *See Ting*, 319 F.3d at 1135-36. The pending motions concern only conflict preemption, not field preemption. *Am. Apparel II*, 2022 WL 6732531, at *2 (limiting Plaintiffs' implied preemption argument to conflict preemption based on Plaintiffs' prior filings). "There are two types of conflict preemption. Conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Puente Ariz.*, 821 F.3d at 1103 (citations and quotation marks omitted). Plaintiffs face a "high bar" to show conflict preemption: "[t]he mere fact that there is tension between federal and state law is not enough to establish conflict preemption." *CDK Global*, 16 F.4th at 1274 (9th

Cir. 2021) (quoting *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1118 (9th Cir. 2020)). "'In the absence of irreconcilability' between state and federal law, 'there is no conflict preemption.'" *Id.* (quoting *United States v. California*, 921 F.3d 865, 882 (9th Cir. 2019)).

Moreover, the Court's analysis of conflict preemption is "substantially identical" to its express preemption analysis, because "[t]he presence of an express preemption provision supports an inference that Congress did not intend to preempt matters *beyond* the reach of that provision." *Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1072-73 (9th Cir. 2005), *aff'd*, 550 U.S. 45 (2007) (emphasis in original). Although "an express provision does not categorically preclude courts from applying principles of implied preemption," principles of implied conflict preemption merely help "interpret the scope of the express preemption provision." *Id.* Under both express and implied conflict preemption, "state law is preempted 'to the extent it actually interferes with the methods by which the federal regulatory scheme was designed to reach its goal.'" *Id.* at 1073 (quoting *Ting*, 319 F.3d at 1137) (cleaned up). The Court, then, will not extend the scope of the CPSA's express preemption provision beyond the methods implied by the text of the provision.

Plaintiffs take issue with using the text of the express preemption provision to determine the "full purposes and objectives of Congress" for an implied conflict preemption challenge. *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). But that exemption provision is necessary to interpret what Congress intended in its effort to "develop uniform safety standards for consumer products and to minimize conflicting State and local regulations." 15 U.S.C. § 2051(b)(3). As the District of Massachusetts explained in a similar implied preemption challenge, "[a]lthough Congress did articulate a concern for uniform regulation in § 2051(b)(3), that concern must be interpreted in light of the statute *as enacted* by Congress." *Nat'l Kerosene Heater Ass'n*, 653 F.

Supp. at 1090 (emphasis added). That court rejected an implied preemption challenge even though state law regulated the same chemicals covered under voluntary federal standards, because those voluntary standards were not promulgated as "consumer product safety standards." *Id.* By limiting the CPSA's preemptive effect to "consumer product safety standards" in the express preemption provision, Congress's scheme "clearly contemplates that state and local regulation [of consumer products] will continue until the Commission has acted." *Id.*

Applying the conflict preemption and facial challenges framework discussed above, the Court concludes that the Oregon provisions are not impliedly preempted. The first problem with Plaintiffs' conflict preemption argument is that Plaintiffs request only that the Court enjoin the provisions "with regard to" the 16 chemicals regulated by the federal government. That is an as-applied challenge and not a facial challenge. Plaintiffs are essentially arguing that Oregon's statute and regulations are preempted by federal law *as applied* to those 16 chemicals. The Court, however, has precluded Plaintiffs from asserting an as-applied challenge. Plaintiffs also do not explain how the Court could sever certain sub-provisions to excise regulations addressing *only* those 16 HPCCCHs.

The next problem with Plaintiffs' implied conflict challenge is that the challenged provisions "are not facially preempted because they have obvious constitutional applications." *Puente Ariz.*, 821 F.3d at 1104. Congress granted the Commission the power to preempt state regulations of specific "consumer product safety standard[s]." 15 U.S.C. § 2075(a). The challenged provisions regulate 57 chemicals for which no relevant federal regulations exist. Because the Commission did not choose to regulate these 57 HPCCCHs, "a state has 'authority to pass its own laws on the subject'" without posing an "obstacle to the regulatory system chosen by Congress." *See Knox*, 907 F.3d at 1180 (quoting *Arizona v. United States*, 567 U.S. 387, 404

(2012). *Every* application of the Oregon provisions to those 57 HPCCCHs is therefore constitutional under the Supremacy Clause. This finding alone is sufficient to resolve Plaintiffs' facial implied preemption challenge under *Salerno*.

Even if the Court were to focus on the 16 federally regulated HPCCCHs, as Plaintiffs request, Plaintiffs' facial implied preemption claim would still fail for three reasons. First, the text of the preemption provision, as discussed under express preemption, is limited to eight categories of state restrictions. The challenged provisions fall into none of those categories. The challenged provisions do not establish any limits on products or packaging that would conflict with federal standards. Instead, the challenged provisions require manufacturers to report the HPCCCHs present in products sold in Oregon and to submit exemption requests establishing manufacturers' compliance with applicable federal standards. The presence of these categories in the express preemption provision supports an inference that Congress did not intend to preempt matters beyond the reach of that provision. *See Metrophones Telecomms.*, 423 F.3d at 1072; *Nat'l Kerosene Heater Ass'n*, 653 F. Supp. at 1090. Even assuming Plaintiffs could show that the challenged provisions create "tension" with the federal scheme, "tension" without "irreconcilability" is insufficient to establish conflict preemption. *CDK Global*, 16 F.4th at 1274.

Second, courts are reluctant to find implied preemption for reporting requirements. *See Air Conditioning*, 410 F.3d at 500 (holding that a state regulation requiring the submission of data to state agencies did not conflict with Congress's intent to preempt "state energy efficiency standards, testing procedures, and consumer labeling requirements" in the Energy Policy and Conservation Act). The same reluctance applies to preemption of state laws enforcing compliance with federal law. *See Direct Auto. Imports Ass'n, Inc. v. Townsley*, 804 F.2d 1408 (5th Cir. 1986) (concluding that, despite an "identical" standard requirement in the National

Traffic and Motor Vehicle Safety Act's express preemption clause, Congress did not intend to preclude states from passing laws to *enforce* compliance with federal standards); *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *6-8 (N.D. Cal. May 15, 2013 (summarizing case law in the context of food regulation finding that when states adopt safety standards identical to federal law, states may also enforce those standards); *see also Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (recognizing that state law is not preempted where it "simply seeks to enforce" federal law). Thus, the CPSA does not expressly *or impliedly* prevent states from enacting reporting requirements or from playing a compliance and enforcement role.

Third, there are constitutional applications of the Notice Provisions even for federally regulated HPCCCHs. Plaintiffs again raise concerns with the Notice Provisions' requirement to report the amount of a HPCCCH present in inaccessible components of a children's product. Plaintiffs argue that this requirement disrupts the uniformity intended under a federal scheme of regulation. Plaintiffs assume that the OHA requires testing of every component in a children's product, regardless of whether that component is considered "accessible" under the CPSA. But the Notice Provisions do not require testing; they require reporting information. As discussed above, this information could come from a variety of sources, including the manufacturing process. Even if Congress intended to define testing requirements for all federally regulated HPCCCHs, Plaintiffs do not show that *every application* of the Notice Provisions would require testing. As such, Plaintiffs' facial challenge to the Notice Provisions fails under *Salerno*.

"In sum, we reject all of [Plaintiffs'] arguments because each one applies to only certain applications of the [state] laws." *Puente Ariz.*, 821 F.3d at 1108. Accordingly, Plaintiffs have not met their "burden of showing a clear and manifest purpose to completely preempt these laws." *Id.* Because Plaintiffs have not come forward with a compelling reason why the challenged

provisions are preempted on their face, the Court rejects their facial challenge and grants

summary judgment in favor of Defendants on the implied preemption claims.

**D.  State Law Claim**

In their state law claim, Plaintiffs seek a declaration that the OHA exceeded its authority

when it adopted the Exemption Regulation because the regulation's documentation and fee

requirements add burdens not required under the Removal Statute, ORS § 431A.260. On that

basis, Plaintiffs seek to enjoin Defendants from enforcing the Exemption Regulation. Because

the Court declines to exercise supplemental jurisdiction over this state law claim, the Court does

not reach Defendants' argument under the Eleventh Amendment.

Under 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental

jurisdiction over a claim if, among other reasons, "the claim raises a novel or complex issue of

State law." 28 U.S.C. § 1367(c)(1). As the Court previously noted, "[t]hat is the situation with

Plaintiffs' second count." *Am. Apparel I*, 2022 WL 2235907, at *15. Plaintiffs' state law claim

involves a new and complex statutory and administrative framework that the Oregon Supreme

Court has yet to interpret. Plaintiffs ask this Court to determine whether the fee and paperwork

requirements under the Exemption Regulation exceed the OHA's statutory grant of authority or

merely administer the law. Plaintiffs quote the Oregon Supreme Court in stating that "an

administrative agency must . . . show that its regulation falls within a clearly defined statutory

grant of authority." *Or. Newspaper Publishers Ass'n v. Peterson*, 244 Or. 116, 123 (1966). But

ORS § 413.042 provides that the Director of the OHA "may adopt rules necessary for the

administration of the laws that the [OHA] is charged with administering," and Oregon courts

interpret ORS § 413.042 as giving the OHA "broad rulemaking authority to carry out the statutes

it is charged with administering." *Adamson v. OHA*, 289 Or. App. 501, 502 (2017).

Plaintiffs cite no precedent that might guide the distinction between the OHA exceeding its authority and properly administering the law, merely pointing to a different statute and rule the Court might interpret as a "useful foil" or "illustrative contrast." Pls.' Resp. Br. at 18-20, ECF 65 (referencing ORS 431A.258(5)(a) and OAR 333-016-2070(3)). This complexity belies Plaintiffs' argument that the Court can "simply" compare "a single statute and a single rule." *Id.* at 14. The Court views the state court as the proper decision-making body to interpret complex issues under Oregon law. *See* 28 U.S.C. § 1367(c); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (noting that values of economy, convenience, fairness, and comity inform the decision to decline to exercise supplemental jurisdiction over state law claims). Moreover, Plaintiffs' state claim is sufficiently distinct from their federal claims that it is not unfair to Plaintiffs to deny them the opportunity to resolve both sets of claims in this forum and lawsuit.

Finally, district courts may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the Court grants in full Defendants' motion for summary judgment against Plaintiffs' federal claims, their state claim is the only claim remaining. The Court declines to grant supplemental jurisdiction to Plaintiffs' second claim.

## CONCLUSION

The Court GRANTS Defendants' Motion for Partial Summary Judgment, ECF 62, on Counts 1 and 3, and DECLINES to exercise supplemental jurisdiction on Count 2. The Court DENIES Plaintiffs' Cross-Motion for Summary Judgment, ECF 67.

**IT IS SO ORDERED**.

DATED this 24th day of January, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge